HULL, Circuit Judge:
Asserting Apprendi errors, Chester McCoy appeals the district court's order dismissing his initial motion to vacate, filed pursuant to 28 U.S.C. § 2255. After review, we affirm. In doing so, we hold that McCoy’s Apprendi claims in his initial § 2255 motion are not jurisdictional and are barred by Teague’s non-retroactivity standard. Additionally, we hold that because McCoy did not raise his Apprendi claims on direct appeal, he is procedurally barred from raising them in his initial § 2255 motion.
I. BACKGROUND
An indictment charged McCoy with conspiracy to possess with intent to distribute “a Schedule II narcotic controlled substance, that is, a mixture and substance containing a detectable amount of cocaine in the form of cocaine base, commonly known as crack cocaine,” in violation of 21 U.S.C. § 846. McCoy pled guilty to this charge. The plea agreement contained a provision regarding the statutory minimum and maximum terms of imprisonment for the charge, which were based on the provisions of 21 U.S.C. § 841(b)(1)(A) applicable to cocaine base offenses involving more than 50 grams, as follows:
The defendant understands and agrees that the court must impose a minimum term of imprisonment of ten years and may impose a statutory maximum term of life imprisonment, followed by a term of supervised release.
The district court sentenced McCoy to ten years’ imprisonment. McCoy did not fíle a direct appeal of his sentence, which became final on January 20,1999.
On October 3, 2000, McCoy filed a motion to vacate pursuant to 28 U.S.C. § 2255, the only one he has filed, arguing that his sentence was illegal under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Specifically, McCoy contended that the indictment, because it did not allege a specific drug quantity, violated the Fifth Amendment indictment clause, thus depriving the court of jurisdiction to sentence him to a mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A).
On October 19, 2000, without seeking a response from the government, the magistrate judge to whom McCoy’s motion was *1248 referred recommended that the district court deny McCoy’s § 2255 petition on the ground that “[t]he Eleventh Circuit Court of Appeals has held that Apprendi has not been made retroactive to cases on collateral review,” citing In re Joshua, 224 F.3d 1281 (11th Cir.2000). McCoy objected to the magistrate judge’s recommendation, arguing that In re Joshua applied only to cases involving successive § 2255 motions and that the retroactivity of Apprendi to his initial § 2255 motion is governed solely by Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). On November 16, 2000, the district court summarily adopted the magistrate judge’s recommendation and denied McCoy’s § 2255 motion.
On appeal, the government concedes that the district court was incorrect in applying In re Joshua to McCoy’s § 2255 motion.[1] However, the government contends (1) that McCoy’s Apprendi claim is barred by Teague's non-retroactivity standard, and (2) that McCoy cannot establish cause and prejudice for his failure to assert his claims on direct appeal, pursuant to United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).[2]
II. DISCUSSION
A. Nature of an Apprendi Claim
As a threshold matter, McCoy characterizes his claim that the indictment did not allege drug quantity as required by Apprendi as “jurisdictional.” He argues that his Apprendi claim can thus be raised in his § 2255 motion notwithstanding the Teague and procedural-bar doctrines. We have held that a jurisdictional defect may not be procedurally defaulted and that therefore a defendant need not show cause and prejudice to justify his failure to raise such a defect. See Harris v. United States, 149 F.3d 1304, 1309 (11th Cir.1998) (stating that a defendant “need not show cause and prejudice to collaterally attack the enhanced sentence because jurisdictional claims cannot be procedurally defaulted”). We have never held that the Teague doctrine does not apply to jurisdictional claims, but even assuming arguendo for present purposes that a claim of a jurisdictional defect avoids the Teague doctrine as well as the procedural-bar doc *1249 trine, McCoy’s claim of Apprendi error is not jurisdictional.
A jurisdictional defect is one that “strip[s] the court of its power to act and ma[kes] its judgment void.” Escareno v. Carl Nolte Sohne GmbH & Co., 77 F.3d 407, 412 (11th Cir.1996). Because parties cannot by acquiescence or agreement confer jurisdiction on a federal court, a jurisdictional defect cannot be waived or proeedurally defaulted — instead, a judgment tainted by a jurisdictional defect must be reversed. See Harris, 149 F.3d at 1308-09; see also United States v. Griffin, 303 U.S. 226, 229, 58 S.Ct. 601, 82 L.Ed. 764 (1938).
The constitutional right to be charged by a grand jury is a personal right of the defendant and does not go to the district court’s subject matter jurisdiction because it may be waived. See Fed. R.Crim.P. 7(b).[3] Thus, the constitutional right to be charged by grand jury indictment simply does not fit the mold of a jurisdictional defect, because it is a right that plainly may be waived.
This conclusion finds implicit confirmation in a host of cases dealing with Apprendi and analogous errors. If Apprendi and analogous errors were jurisdictional, this Court could not of course affirm despite error; jurisdictional errors are not subject to plain- or harmless-error analysis. But our decisions have consistently applied plain- or harmless-error review, depending on the timing of the objection, to Apprendi-based arguments that an indictment failed to include specific drug quantity.[4] Indeed, this Court in applying plain-error review has affirmed convictions and sentences for a § 841(a) offense where the indictment failed to specify drug quantity even though the defendant received a greater sentence than the statutory maximum provided in § 841(b)(1)(C) without regard to quantity. See, e.g., United States v. Pease, 240 F.3d 938, 943-44 (11th Cir.2001) (finding plain error in the defendant’s thirty-year sentence based on an indictment that failed to allege specific drug quantity, but finding no effect on the defendant’s substantial rights); United States v. Swatzie, 228 F.3d 1278, 1282-84 (11th Cir.2000) (stating “we assume ar-guendo that there was error, and that it was plain,” where the defendant’s life sentence was based on an indictment that failed to allege drug quantity, but finding no effect on the defendant’s substantial rights).[5]
The majority of circuits to consider the issue, moreover, have applied plain-error review to Apprendi-based claims that an *1250 indictment fails to specify drug quantity, even when the defendant was sentenced to a greater sentence than that provided by the statutory maximum in § 841(b)(1)(C) for a § 841(a) offense. See United States v. Terry, 240 F.3d 65, 74-75 (1st Cir.2001) (finding no plain error in the defendant’s 324-month sentence based on indictment which did not allege drug quantity), cert. denied, — U.S. -, 121 S.Ct. 1965, 149 L.Ed.2d 759 (2001); United States v. Patterson, 241 F.3d 912, 914 (7th Cir.2001) (noting that “the indictment was silent on the quantity of drugs the conspirators sold, but we cannot see why that matters to plain-error analysis” and affirming sentences exceeding twenty years); United States v. Nance, 236 F.3d 820, 824 (7th Cir.2000) (finding the defendant’s 262-month sentence based on an indictment that did not specify drug quantity was plain error under Apprendi which affected defendant’s substantial rights, but finding that it did not seriously affect the integrity of the judicial proceedings). See also United States v. Mojica-Baez, 229 F.3d 292, 307 (1st Cir.2000) (finding that sentencing a defendant to more than ten years for an aggravated firearm offense under 18 U.S.C. § 924(c) where the indictment failed to allege the type of firearm used was plain error, but finding no prejudice), cert. denied, — U.S. -, 121 S.Ct. 2215, 150 L.Ed.2d 209 (2001).[6] The Tenth Circuit recently held en banc that “the failure of an indictment to allege an essential element of a crime does not deprive a district court of subject matter jurisdiction; rather, such a failure is subject to harmless error review.” United States v. Prentiss, 256 F.3d 971, 981 (10th Cir.2001).[7]
Our conclusion is not only consistent with the decisions of those other circuits, but also with Supreme Court precedent. *1251 In Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the Supreme Court held that “the omission of an element [in a jury instruction] is an error that is subject to harmless-error analysis.” Id. at 15, 119 S.Ct. 1827.[8] An indictment’s error in not including an element of the offense is “analogous to the instructional error the Court considered in Neder.” United States v. Nance, 236 F.3d 820, 825 (7th Cir.2000). Like the Seventh and First Circuits, we are “compelled by the Supreme Court’s decision in Neder to subject the indictment error in this case to plain error review.” Mojicar-Baez, 229 F.3d at 311. As the court in Mojicar-Baez explained:
It is true ... that Neder was explicitly concerned with the failure to submit an element of an offense to the petit jury at trial and not with the failure to present an element to the grand jury to secure an indictment. But we do not think that distinction is significant where the indictment provided the • defendant with fair notice of the charges against him.
Id. (citations omitted); see also Prentiss, 256 F.3d at 984 (quoting with approval Mojicar-Baez). As the Seventh Circuit has pointed out, “[o]n plain error review, ‘once the court concludes that the evidence was so strong that a petit jury was bound to find[ ] that a particular drug and quantity was involved, we can be confident in retrospect that the grand jury (which acts under a lower burden of persuasion) would have reached the same conclusion.’ ” United States v. Martinez, 258 F.3d 582, 587 (7th Cir.2001) (quoting United States v. Patterson, 241 F.3d 912, 914 (7th Cir.2001) and affirming life sentence. despite defendant’s claim that indictment did not *1252 allege a specific drug quantity and should be dismissed). We agree that any constitutional error arising from the omission of drug quantity in a § 841 indictment in the Apprendi context is analogous to the jury-instruction error the Supreme Court reviewed in Neder and that both errors should be treated under the same standard of review.[9]
We disagree with the concurring opinion’s position that Apprendi error in an indictment is a jurisdictional defect.[10] Both before and after Apprendi, an indictment charging that a defendant violated a law of the United States gives the district court jurisdiction over the case and empowers it to rule on the sufficiency of the indictment. See Alikhani v. United States, 200 F.3d 732, 734-35 (11th Cir.2000).[11] An Apprendi-based challenge to a § 846 or § 841 indictment for failure to allege a specific drug quantity is not of a jurisdictional dimension but, at most, one of sufficient specificity of the indictment.[12]
. The concurring opinion adopts an essentially categorical approach that treats all *1253 indictment problems the same way without recognizing the significant differences between the nature of Apprendi error and other distinctly different indictment problems. Because indictment errors are not all the same, we disagree with this categorical approach and take this opportunity to explain why the analysis in the concurring opinion fails here.
First, one type of indictment problem that is involved in some of the decisions cited by the concurring opinion is where the indictment is defective because it charged no crime at all. For example, see United States v. Meacham, 626 F.2d 503 (5th Cir.1980) (finding the indictment charging a “conspiracy to attempt” was fatally defective as there is no such offense). This, however, is not a case where a defect in an indictment results in the indictment charging no crime at all. Instead, a § 846 or § 841 indictment that charges a defendant conspired to possess or possessed with intent to distribute cocaine base, even absent specification of a precise amount of cocaine base, still charges a complete federal offense.
Second, another type of indictment problem in certain decisions relied upon by the concurring opinion involves such material differences between the proof at trial and the crime alleged in the indictment that the proof at trial impermissibly broadens the crime to one not charged in the indictment, thereby requiring a reversal of the underlying conviction. For example, Stirone v. United States, 361 U.S. 212, 215-17, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), was a direct appeal about the interstate commerce element required for a Hobbs Act violation. Stirone involved a material difference between the facts alleged in the indictment in support of that element— extortion in the transportation of sand from other states into Pennsylvania — and the facts shown at trial — extortion in the transportation of steel from Pennsylvania into Michigan and Kentucky. Id. at 213-14, 80 S.Ct. 270.[13] This type of indictment error ripens when the jury verdict comes in and at the time of conviction. In this situation, the charging terms (or allegations in the indictment) are materially broadened and altered to such a significant extent as to constitute an entirely new or different theory of the case and as to cause what the concurring opinion deems in effect a constructive amendment of the indictment.
In contrast, Apprendi errors — whether arising from the indictment or a jury instruction — are errors in criminal procedure that do not occur or ripen until the time of sentencing and affect at most the permissible sentence but do not invalidate the criminal conviction or materially change the theory of the case so as to amend the underlying indictment. Indeed, allegations in § 846 or § 841 indictments that charge generally that a defendant conspired to possess or possessed with intent to distribute cocaine base are not even broadened when a precise amount of that *1254 alleged cocaine base is proven at trial or at sentencing. Proof that supports only a precise drug quantity falls within McCoy’s broader drug conspiracy charge and, if anything, narrows the allegations in the indictment to that amount. There is no significant variance material enough to warrant per se reversal, much less to create a jurisdictional error.[14]
Third, and in any event, nothing in Sti-rone says that Stirone-type errors in indictments are jurisdictional or that the procedural-bar doctrine in § 2255 cases does not apply to Stirone-type errors. At most, what Stirone held is the particular error there was not subject to harmless-error analysis, resulting in reversal of the conviction in that case. Id. at 215-19, 80 S.Ct. 270. More importantly, Stirone was decided (a) before Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), in which the Supreme Court first stated that certain constitutional errors could be deemed harmless, and (b) before Neder, in which the Supreme Court further indicated that “most constitutional errors can be harmless.” Neder, 527 U.S. at 8, 119 S.Ct. 1827 (quoting Fulminante, 499 U.S. at 306, 111 S.Ct. 1246). The Supreme Court has admonished that “[i]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitution[al] errors that may have occurred are subject to harmless-error analysis.” Id. (quoting Rose v. Clark, 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). Moreover, the list given in Neder of errors not subject to harmless- or plain-error review is a short one. See id. (mentioning complete denial of counsel, biased trial judge, racial discrimination in grand jury selection, denial of self-representation at trial, denial of public trial, and defective reasonable doubt instructions as structural errors). In light of this clear trend in Supreme Court precedent, we decline to extend Stirone beyond its terms to say that Apprendi error is jurisdictional.
Finally, for the reasons set forth by the First Circuit in United States v. Mojica-Baez, 229 F.3d 292, 309-11 (1st Cir.2000), and the Tenth Circuit in United States v. Prentiss, 256 F.3d 971, 984 n. 11 (10th Cir.2001), we do not believe that Stirone and cases like it imply a different result for Apprendi-error cases.
Thus, following the Supreme Court’s, other circuits’, and our precedent, we conclude that a claim of Apprendi error is not jurisdictional. Therefore, we next address whether McCoy’s claim of Apprendi error is barred by Teague.
B. Teague v. Lane Bar
Although the government did not raise a Teague-bar defense in the district court, this Court has discretion to consider the argument on appeal. See Spaziano v. Singletary, 36 F.3d 1028, 1041-42 & n. 5 (11th Cir.1994). In Spaziano, this Court held that, although it retains discretion to decline to consider a Teague-bar defense when not raised below, addressing the issue is “consistent with our well-established precedent that a district court’s decision may be affirmed on grounds the district court did not address.” Id. at 1041; see also Caspari v. Bohlen, 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (“[A] federal court may, but need not, decline to apply Teague if the State does not argue *1255 it. But if the State does argue [it] ..., the court must apply Teague before considering the merits of the claim.”) (citation omitted); Fisher v. Texas, 169 F.3d 295, 304-05 (5th Cir.1999) (applying the Teague doctrine, “[i]n the interest of finality and judicial economy,” even though that defense was raised for the first time on appeal); Bannister v. Delo, 100 F.3d 610, 622 (8th Cir.1996) (applying the Teague doctrine even though the state did not argue it). In this case, it is even more appropriate to consider Teague because the government was not asked to respond to McCoy’s § 2255 petition in the district court, and therefore had no opportunity to raise Teague below.[15] Moreover, McCoy himself raised the Teague issue in his objections to the magistrate judge’s recommendation to the district court, and the government raised the issue at the first opportunity on appeal.
The Teague doctrine bars retroactive application in a § 2255 proceeding of any new constitutional rule of criminal procedure which had not been announced at the time the movant’s conviction became final, with two narrow exceptions. Teague, 489 U.S. at 310-13, 109 S.Ct. 1060. A new rule should be applied retroactively only if it (1) “places certain kinds of primary private individual conduct beyond the power of the criminal law-making authority to proscribe,” or (2) “requires the observance of those procedures that ... are implicit in the concept of ordered liberty.” Id. at 307, 109 S.Ct. 1060 (internal quotation marks omitted).
Whether the non-retroactivity standards set forth in Teague apply to bar a petitioner’s Apprendi claim is a matter of first impression in this circuit. All circuits to reach the issue have held that the retroactive application of Apprendi is barred by Teague. See Dukes v. United States, 255 F.3d 912 (8th Cir.2001) (life sentence); United States v. Moss, 252 F.3d 993, 997 (8th Cir.2001) (360-month sentence); United States v. Sanders, 247 F.3d 139, 147 (4th Cir.2001) (188-month sentence); Jones v. Smith, 231 F.3d 1227, 1236 (9th Cir.2000) (life sentence).
We give the Teague question priority in this particular case for several reasons. First, if Apprendi does not apply retroactively, this alone resolves the case. Given that Apprendi is being raised in the vast majority of § 2255 motions throughout our circuit, judicial economy counsels that we determine first whether the Apprendi rule even applies retroactively. Second, the Supreme Court has indicated that the Teague retroactivity decision is to be made as a “threshold matter” and should be addressed “before considering the merits of [a] claim.” See, e.g., Penry v. Lynaugh, 492 U.S. 302, 329, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); Caspari v. Bohlen, 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994); Lambrix v. Singletary, 520 U.S. 518, 524, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) (quoting Penry and Caspari).
Third, the Supreme Court’s Lambrix decision, contrary to the concurring opinion’s position, fully supports our deciding *1256 the Teague retroactivity issue first. Lam-brix was a § 2254 case where the Supreme Court emphasized that “[a] State’s procedural rules are of vital importance to the orderly administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system.” 520 U.S. at 525, 117 S.Ct. 1517. Therefore, Lambrix noted that the procedural-bar issue should ordinarily be considered first to “ensure! ] that the states’ interest in correcting their own mistakes is respected in all federal habeas cases” in a § 2254 ease. Id. at 523, 117 S.Ct. 1517. Lambrix’s comment about considering the procedural-bar issue first was made in the context of “comity” concerns in § 2254 cases and in order to prevent a defendant from evading state procedural rules in federal court. Id. at 523-25, 117 S.Ct. 1517. However, the instant case involves a federal conviction and a § 2255 motion which do not implicate any state procedural rules. Moreover, even after noting those concerns, the Supreme Court itself in Lambrix actually proceeded to decide the Teague issue first. Id. at 525, 117 S.Ct. 1517.
Thus, we will decide first the threshold Teague issue.
1. New Rule of Constitutional Law
Under Teague, “a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government [or] ... if the result was not dictated by precedent existing at the time the defendant’s conviction became final.” Teague, 489 U.S. at 301, 109 S.Ct. 1060 (citations omitted). The other circuits to address the issue have determined that Apprendi did constitute a new rule of criminal procedure by requiring that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. See Moss, 252 F.3d at 997 (holding that “Apprendi is obviously a ‘new rule’ subject to the general rule of nonretroactivity”); Sanders, 247 F.3d at 147 (holding that Apprendi “constitutes a procedural rule because it dictates what fact-finding procedure must be employed to ensure a fair trial” and that it “is certainly a new rule of criminal procedure”); Jones v. Smith, 231 F.3d at 1236 (holding that “Apprendi certainly established a new rule”).
We agree. Although it may have been foreshadowed by Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), Apprendi established a new rule of criminal procedure, one that was not dictated by precedent existing before the Apprendi decision was released. Until it was announced, ah circuits had been upholding sentences that were greater than the otherwise applicable maximum sentences based on drug quantity not charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt. Therefore, under Teague, because the new rule had not been announced at the time McCoy’s conviction became final, it cannot be apphed retroactively to his § 2255 petition unless it meets one of Teague’s two narrow exceptions.
2. Exceptions to Teague’s Non-Retro-activity Standards
The first category of rules excepted from Teague’s bar is that which places “certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority.” Teague, 489 U.S. at 307, 109 S.Ct. 1060. The circuits that have addressed this exception agree that it is inapplicable to the new rule of criminal procedure announced in Appren-di, since Apprendi did not decriminalize any class of conduct or prohibit a certain category of punishment for a class of de *1257 fendants. See Jones v. Smith, 231 F.3d at 1237 (holding that “[t]he first exception identified in Teague is plainly inapplicable here, where the state’s authority to punish Petitioner for attempted murder is beyond question”); Sanders, 247 F.3d at 148 (holding that “[t]he first exception clearly does not apply here because Apprendi did not place drug conspiracies beyond the scope of the state’s authority to proscribe”); Moss, 252 F.3d at 997 (discussing the second exception as the only exception “[r]elevant to our inquiry”); see also Daniels v. United States, 254 F.3d 1180, 1192 (10th Cir.2001) (deciding in the context of a successive § 2255 motion that Apprendi does not fall within Teague’s first exception).[16]
The second category of rules excepted from Teague’s bar is that which “requires the observance of those procedures that are implicit in the concept of ordered liberty.” Teague, 489 U.S. at 307, 109 S.Ct. 1060. Such “watershed” rules of criminal procedure are those in which (1) a failure to adopt the new rule “creates an imper-missibly large risk that the innocent will be convicted,” and (2) “the procedure at issue ... imphcatefs] the fundamental fairness of the trial.” Id. at 312, 109 S.Ct. 1060. In order to qualify under Teague’s second exception, the new rule “ ‘must not only improve accuracy [of trial], but also alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.’ ” United States v. Swindall, 107 F.3d 831, 835 (11th Cir.1997) (quoting Sawyer v. Smith, 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990)). The Supreme Court has underscored the narrowness of this second exception by using as a prototype the rule of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and by stating that “[i]t is ‘unlikely that many such components of basic due process have yet to emerge.’ ” Sawyer, 497 U.S. at 243, 110 S.Ct. 2822 (quoting Teague, 489 U.S. at 313, 109 S.Ct. 1060); see also Tyler v. Cain, — U.S. —, 121 S.Ct. 2478, 2484 n. 7, 150 L.Ed.2d 632 (2001) (emphasizing the “truly ‘watershed’ ” nature of a rule which would fall within this exception); Spaziano, 36 F.3d at 1042-43 (stating that the new rule “must be so fundamentally important that its announcement is a ‘groundbreaking occurrence’ ”).
The other circuits to address the issue agree that Apprendi is not sufficiently fundamental to fall within Teague’s second exception. See Jones v. Smith, 231 F.3d at 1238 (holding that “the Apprendi rule, at least as applied to the omission of certain necessary elements from the state court information, is neither implicit in the concept of ordered liberty nor an absolute prerequisite to a fair trial”); Sanders, 247 F.3d at 148 (holding that “a rule which merely shifts the fact-finding duties from an impartial judge to a jury clearly does not fall within the scope of the second Teague exception”); Moss, 252 F.3d at 998 (stating that “we do not believe Apprendi’s rule recharacterizing certain facts as offense elements that were previously thought to be sentencing factors resides anywhere near that central core of fundamental rules that are absolutely necessary to insure a fair trial”).
*1258 - We agree with these other circuits that the new rule announced by the Supreme Court in Apprendi does not fall within either exception to Teague’s, non-retroactivity standard. Therefore, like these other circuits, we hold that the new constitutional rule of criminal procedure announced in Apprendi does not apply retroactively on collateral review. Consequently, McCoy, whose conviction became final before the Supreme Court announced Apprendi, cannot now collaterally challenge his conviction on the basis of a claimed Apprendi error.

C. Procedural Bar

We also affirm the dismissal of McCoy’s § 2255 petition on the additional alternative ground that he is procedurally barred from challenging his sentence on Apprendi grounds because he failed to raise the argument on direct appeal. A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal. See Frady, 456 U.S. at 167-68, 102 S.Ct. 1584. Specifically, McCoy must show both “(1) ‘cause’ excusing his double procedural default, and (2) ‘actual prejudice’ resulting from -the errors of which he complains.” Id. at 168,102 S.Ct. 1584.
McCoy contends that “cause” exists because the basis for his Apprendi claim was not known until after his conviction became final, since drug quantity was considered a mere sentencing factor until Ap-prendi. It is true that “a claim that ‘is so novel that its legal basis is not reasonably available to counsel’ may constitute cause for a procedural default.” Bousley v. United States, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting Reed v. Ross, 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)). However, “the question is not whether subsequent legal developments have made counsel’s task easier, but whether at the time of the default the claim was ‘available’ at all.” Smith v. Murray, 477 U.S. 527, 537, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); see also Waldrop v. Jones, 11 F.3d 1308, 1315 (11th Cir.1996) (stating that “a rule is ‘novel,’ and therefore cause for procedural default, only if the petitioner did not have the legal tools to construct the claim before the rule was issued”). Apprendi himself raised the issue some time before his case was argued to the New Jersey appellate court in February of 1997, see State v. Apprendi, 304 N.J.Super. 147, 698 A.2d 1265 (1997), so the building blocks for arguing it were obviously in existence as early as then. And as the other circuits to address this issue have noted, the foundation for Ap-prendi was laid years before the Supreme Court announced Apprendi. See Sanders, 247 F.3d at 146 (stating that “[t]he germ of Sanders’ Apprendi claim had sprouted at the time of his conviction [in 1997] and there is no reason why he could not have raised it then”); Moss, 252 F.3d at 1001 (stating that “the argument that drug quantity is an offense element under § 841(b), not a sentencing factor, was certainly available to Moss’s counsel at the time of Moss’s direct appeal [in 1998]”); United States v. Smith, 241 F.3d 546, 548 (7th Cir.2001) (stating that “the foundation for Apprendi was laid long before 1992”); Garrott v. United States, 238 F.3d 903, 905-06 (7th Cir.2001) (noting that “[o]ther defendants began making Apprendi-like arguments soon after the Sentencing Guidelines came into being”), cert. denied, - U.S. -, 121 S.Ct. 2230, 150 L.Ed.2d 221 (2001).
The fact that every circuit which had addressed the issue had rejected the proposition that became the Apprendi rule simply demonstrates that reasonable defendants and lawyers could well have concluded it would be futile to raise the issue. *1259 That is the basis for the dissenting opinion in United States v. Smith, 250 F.3d 1073 (7th Cir.2001) (Woods, J., dissenting), which the concurring opinion in this case embraces. The problem with that position is that the Supreme Court could not have been clearer that perceived futility does not constitute cause to excuse a procedural default. Bousley, 523 U.S. at 623, 118 S.Ct. 1604 (“As we clearly stated in Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.”) (internal quotation marks omitted); Smith v. Murray, 477 U.S. 527, 535, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1996) (noting “the established rule that ‘perceived futility alone cannot constitute cause’ ”). Unless and until the Supreme Court overrules its decisions that futility cannot be cause, laments about those decisions forcing defense counsel to file “kitchen sink” briefs in order to avoid procedural bars, see United States v. Smith, 250 F.3d at 1077 (Woods, J., dissenting), are beside the point.
In short, we agree with these circuits that the Apprendi claim McCoy now seeks to raise was reasonably available to his counsel at the time of McCoy’s conviction. Therefore, we hold that because McCoy cannot show cause for his failure to raise the issue on direct appeal, he is procedurally barred from raising it now. Having determined that McCoy cannot show cause for his failure, we need not discuss whether he suffered “actual prejudice” resulting from the errors of which he complains.
III. CONCLUSION
For the reasons discussed above, we hold that McCoy’s Apprendi claims are not jurisdictional and that his Apprendi claims are barred by Teague’s non-retroactivity standard. Additionally, McCoy’s Appren-di claims, raised for the first time in his initial § 2255 motion, are barred by the procedural default doctrine. For both reasons, the district court’s order dismissing McCoy’s § 2255 motion is therefore AFFIRMED.

. The government, is correct in its concession. In re Joshua involved a successive § 2255 motion and was thus subject to the AEDPA's requirement prohibiting successive filings unless they involve "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.” 28 U.S.C. § 2244(b)(2)(A). Because McCoy is bringing his first § 2255 motion, In re Joshua does not apply.

. McCoy contends that the certificate of ap-pealability ("COA”) issued in this case, which specifically included only the In re Joshua issue and the substantive merits of McCoy's Apprendi argument, is not broad enough to allow this Court to consider the government’s arguments that McCoy's § 2255 motion is barred by either Teague v. Lane or by the cause and prejudice standard.
Although our review is limited to the issues specified in the COA, "we will construe the issue specification in light of the pleadings and other parts of the record.” Murray v. United States, 145 F.3d 1249, 1251 (11th Cir.1998). The application of Teague v. Lane and of the cause and prejudice standard are procedural issues which must be resolved before this Court can reach the merits of McCoy’s underlying Apprendi claim. Because these arguments have not been addressed by the district court, we read the COA to encompass these issues. See, e.g., Jones v. Smith, 231 F.3d 1227, 1231 (9th Cir.2000) ("Absent an explicit statement by the district court, in cases where a district court grants a COA with respect to the merits of a constitutional claim but the COA is silent with respect to procedural claims that must be resolved if the panel is to reach the merits, we will assume that the COA also encompasses any procedural claims that must be addressed on appeal.”).

. Rule 7(b) provides as follows:
Waiver of Indictment. An offense which may be punished by imprisonment for a term exceeding one year or at hard labor may be prosecuted by information if the defendant, after having been advised of the nature of the charge and of the rights of the defendant, waives in open court prosecution by indictment.
Fed.R.Crim.P. 7(b).

. See, e.g., United States v. Pease, 240 F.3d 938, 943-44 (11th Cir.2001); United States v. Gerrow, 232 F.3d 831, 834 (11th Cir.2000); United States v. Shepard, 235 F.3d 1295, 1297 (11th Cir.2000); United States v. Swatzie, 228 F.3d 1278, 1282-84 (11th Cir.2000); see also United States v. Nealy, 232 F.3d 825, 830 n. 5 (11th Cir.2000) (stating that defendant abandoned his argument that the indictment was required to include the element of drug quantity by not raising the issue at trial or in his initial brief on appeal, but nonetheless noting "that the indictment likely only needs to reference the statute”).

.Our application of plain error review in the indictment context is consistent with our practice in other Apprendi cases, centering on the failure to submit an alleged element to the jury, in which we have also applied harmless- or plain-error analysis based on the timing of the objection. See United States v. Gallego, 247 F.3d 1191, 1198-2001 (11th Cir.2001) (affirming life sentences); United States v. Wims, 245 F.3d 1269, 1272 (11th Cir.2001) *1250 (affirming life sentence); United States v. Candelario, 240 F.3d 1300, 1311 (11th Cir.2001) (affirming 360-month sentence), cert. denied, - U.S. -, 121 S.Ct. 2535, 150 L.Ed.2d 705 (2001); United States v. Pease, 240 F.3d 938, 943 (11th Cir.2001) (affirming 30-year sentence); United States v. Smith, 240 F.3d 927, 930 (11th Cir.2001) (affirming 30-year sentence); United States v. Swatzie, 228 F.3d 1278, 1282-83 (11th Cir.2000) (affirming life sentence).

. In United States v. Tran, 234 F.3d 798 (2d Cir.2000), the Second Circuit held that the government’s failure to include the element of the type of firearm used or carried in a 18 U.S.C. § 924(c) violation was jurisdictional error and thus not subject to plain-error review. However, the Second Circuit questioned the soundness of Tran when it voted to rehear en banc United States v. Thomas, 204 F.3d 381 (2d Cir.2000). See United States v. Thomas, 248 F.3d 76, 78 (2d Cir.2001) (en banc). The Second Circuit requested the parties to brief the following issues:
(1)Does drug quantity under 21 U.S.C. § 841, when it increases a defendant's sentence above a statutory maximum, constitute an element of the offense under the analysis used in Apprendi ... such that it must be alleged in the indictment?
(2) Assuming that an indictment's failure to allege drug quantity is error, under what circumstances is that error subject to harmless or plain error review?
(3) Should this Court’s analysis in the instant case be governed or influenced by United States v. Tran, 234 F.3d 798 (2d Cir.2000), and, if so, is Trait's reasoning sound?
Id. at 78.

. In United States v. Jackson, 240 F.3d 1245, 1248-49 (10th Cir.2001), the Tenth Circuit held that the failure of an indictment to allege the element of drug quantity cannot be reviewed for plain or harmless error but must be reversed and remanded. However, in Prentiss, the Tenth Circuit stated in its en banc opinion:
Contrary to our prior precedents, we hold that tire failure of an indictment to allege an essential element of a crime does not deprive a district court of subject matter jurisdiction; rather, such failure is subject to harmless error review. To the extent that this Court's prior decisions ... hold otherwise, we overrule them.
*1251 Prentiss, 256 F.3d at 981 (emphasis supplied).

. Ellis E. Neder was convicted by a jury of 73 counts of a 90-count indictment. United States v. Neder, No. 91-175-Cr-J-16 (M.D.Fla.1991). Among those counts were multiple charges of mail fraud, wire fraud, and bank fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1344, respectively. Neder appealed, arguing that “materiality” was an element of the offenses of mail fraud, wire fraud, and bank fraud, and that the district court had erred in not submitting "materiality” to the jury. See United States v. Neder, 136 F.3d 1459 (11th Cir.1998). Instead, the district court had entered its own findings regarding materiality outside the presence of the jury. Id. at 1461. This Court determined that “materiality” was not an element of these fraud offenses and that the district court had not erred. Id. at 1463. This Court based its determination primarily on the fact that the word "material” was not contained anywhere in the statutory language of 18 U.S.C. §§ 1341, 1343, or 1344.
Upon review, however, the Supreme Court held that "materiality” was an element of these fraud counts. Neder v. United States, 527 U.S. 1, 25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The Supreme Court remanded to this Court to determine whether the district court’s failure to instruct the jury on materiality as an element of these counts was harmless error. Id. On remand, this Court determined that the district court's omission of the element of "materiality” in its jury instructions on these fraud offenses was harmless error and affirmed Neder’s convictions for these offenses. United States v. Neder, 197 F.3d 1122, 1134 (11th Cir.1999).
Although there is no mention of this fact in this Court’s opinions or in the Supreme Court opinion, there was no allegation in the indictment of "materiality” in connection with the mail fraud, wire fraud, and bank fraud counts. See Neder Indictment, pp. 51-55, 57-66, 73-75, 79-84; see also United States v. Neder, 136 F.3d at 1461 (noting only that ”[t]he indictment contained materiality as an element of many of” the offenses contained in the indictment). However, although this Court and the Supreme Court discussed the implications of the absence of this element from the jury instructions, analyzing its omission for harmless error, neither court discussed the legal significance of the absence of the element from the indictment. Nonetheless, from this we .glean an implication that the absence of an element from an indictment would also be analyzed for harmless error.

. In this same vein, other cases from this circuit which have discussed review of Ap-prendi errors in the jury instruction, rather than the indictment, context are also instructive to our discussion in this case. See United States v. Smith, 240 F.3d 927 (11th Cir.2001); United States v. Candelario, 240 F.3d 1300 (11th Cir.2001); United States v. Nealy, 232 F.3d 825 (11th Cir.2000). These cases determined that Apprendi error is a constitutional error, subject to plain- or harmless-error review, and does not create a structural error. In these cases, we found harmless error or no effect on the defendants’ substantial rights and affirmed the defendants’ sentences, even though they exceeded the applicable statutory maximum penalty under § 841(b)(1)(C). See Smith, 240 F.3d at 930 & n. 5 (affirming 30-year sentence); Candelario, 240 F.3d at 1308 (affirming life sentence); Nealy, 232 F.3d at 829-30 & n. 4 (affirming 32-year sentence).

. The concurring opinion limits its jurisdiction argument to cases where the sentences exceed 20 years under §§ 841(b)(1)(A) and 841(b)(1)(B) and where the Apprendi error arises from an indictment absent a specific drug quantity (as opposed to arising from a jury-instruction error or burden of proof issue). Thus, our discussion at this juncture focuses on the indictment aspect of Apprendi error.

. In Alikhani v. United States, we explained that:
"Subject-matter jurisdiction defines the court’s authority to hear a given type of case....” United States v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984). Congress bestows that authority on lower courts by statute; in our case, Congress has provided the district courts with jurisdiction — "exclusive of the courts of the States” — of "all offenses against the laws of the United States.” 18 U.S.C. § 3231. The United States filed an indictment charging Alikhani with violating "laws of the United States,” and § 3231 on its face empowered the district court to enter judgment upon the merits of the indictment. ...
200 F.3d at 734 (11th Cir.2000). Likewise, as Judge Easterbrook aptly summarized: "Subject matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231.... That’s the beginning and the end of the ‘jurisdictional’ inquiry.” Hugi v. United States, 164 F.3d 378, 380 (7th Cir.1999).

.McCoy’s indictment broadly charges McCoy with conspiracy to possess with intent to distribute a detectable amount of cocaine base in violation of 21 U.S.C. § 846. Our precedent strongly suggests that specifying a number is not the only way of alleging drug quantity in an indictment. See United States v. Nealy, 232 F.3d 825, 830 & n. 5 (11th Cir.2000) (stating "that the indictment likely only needs to reference the statute” but finding that the defendant abandoned the indictment issue and affirming his 32-year sentence) (citing United States v. Fern, 155 F.3d 1318, 1325 (11th Cir.1998)); Fern, 155 F.3d at 1325 ("If an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge.”) (citing United States v. Stefan, 784 F.2d 1093, 1101-02 (11th Cir.1986)). McCoy’s indictment, if anything, is not limited to a specific *1253 drug quantity, but broadly encompasses any detectable amount of cocaine base, from one gram to 10,000 grams or beyond. McCoy’s indictment also does not reference § 841(b)(1)(C) and does not narrow or confine McCoy’s crime to a lesser sentence or crime under § 841(b)(1)(C) as the concurring opinion argues.

. Similarly, in United States v. Peel, 837 F.2d 975 (11th Cir.1988), the statutory language required that the defendant be on board a vessel of the United States or on board a vessel subject to the jurisdiction of the United States. However, the proof at trial showed only that the defendant was a citizen of the United States, and the trial court charged the jury the essential element was that the defendant was a "citizen of the United States on board any vessel.” Id. at 977-78.

. See United States v. Bursten, 453 F.2d 605, 607-08 (5th Cir.1971) (concluding the variance was harmless and not material where an indictment stated that defendant indicated on his tax return that "no tax was due and owing,” and the evidence demonstrated that defendant had not used that language on his return but had entered on the final line of the tax return, "Please compute and bill if owed”).

. McCoy filed his § 2255 motion on October 3, 2000. On October 19, 2000, pursuant to 28 U.S.C. § 2255, Rule 4(b), the magistrate judge recommended denying the motion without seeking a response from the government. See 28 U.S.C. § 2255, Rule 4(b) (“If it plainly appears from the face of the motion ... that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the mov-ant to be notified. Otherwise, the judge shall order the United States Attorney to file an answer or other pleading within the period of time fixed by the court....”). On November 7, 2000, McCoy filed an objection to the magistrate judge’s recommendation. On November 16, 2000, the district court denied McCoy's motion.

. We reject the concurring opinion’s position that the Apprendi decision creates a new substantive rule of law. In Apprendi, the Supreme Court specifically noted that "[t]he substantive basis for New Jersey’s enhancement ... is not at issue; the adequacy of New Jersey's procedure is.” 530 U.S. at 475, 120 S.Ct. 2348 (2000). The application of Appren-di merely changes the method or procedure for determining drug quantity and his sentence; it does not make McCoy’s conduct not criminal, thereby raising the spectre of actual innocence as the concurring opinion implies. Thus, as other circuits have, we conclude Apprendi announced a new rule of criminal procedure.